■ SANDRA M. GRANGER, Appellant, v L.W. KEETER III et al., Respondents. [803 NYS2d 814]—

Carpinello, J. Appeal from an order of the Supreme Court (Teresi, J.), entered June 8, 2004 in Albany County, which granted defendants' motion for summary judgment dismissing the complaint.

Plaintiff was allegedly injured in a May 24, 2000 rear-end collision with a vehicle owned by defendant MAPG, Ltd. and operated by defendant L.W. Keeter III. At issue on appeal is an order of Supreme Court granting defendants summary judgment on the ground that plaintiff did not suffer a serious injury within the meaning of Insurance Law § 5102 (d). Upon our review of the record, we find that summary judgment was properly granted. Accordingly, we affirm.

Plaintiff alleged serious injury under the statutory categories of permanent consequential limitation of use of a body organ or member (i.e., her neck, left shoulder and lower back) and a medically determined nonpermanent injury which prevented

her from performing substantially all of her customary daily activities for at least 90 of the first 180 days immediately following the accident. In support of summary judgment, defendants submitted an affidavit of a physician specializing in neurology and neurosurgery who conducted an examination of plaintiff, as well as reviewed certain pleadings in the matter and plaintiff's medical records. Based upon his examination and review of these materials, he opined within a reasonable degree of medical certainty that she did not sustain any injury of a permanent nature as a result of the accident or a nonpermanent, objectively medically determined injury or impairment of sufficient severity so as to prevent her from performing substantially all of her customary daily activities for 90 of the first 180 days following that accident.

According to this physician, plaintiff suffered no more than a mild cervical and lumbar strain as a result of the accident. Indeed, immediately following the accident, X rays of her cervical spine were normal, "demonstrat[ing] no evidence of fracture or subluxation." An MRI of the cervical spine performed in July 2000 revealed, among other negative findings, no evidence of subluxation or disc herniation. Although plaintiff was referred to a neurologist in September 2001, significantly, this was done at the request of her attorney. This neurologist's report of October 2001 reveals "no evidence of injury to spine, nerve roots or peripheral nerves. Objective findings in regard to the lower back and muscles of the lower extremities [were] entirely normal today." Moreover, nerve conduction and needle EMG studies ordered by this neurologist were all normal, revealing "no electrodiagnostic evidence of an upper extremity neuropathy or cervical radiculopathy bilaterally."

At her examination before trial, plaintiff testified that she could not recall the precise amount of time she lost from work immediately following the accident but claimed that it was less than one month. A no-fault form completed by plaintiff on January 26, 2001 indicates that she missed only a few days.[1] She was also unable to recall if and when she missed any other time from work as a result of the accident. Morever, while plaintiff acknowledged at her examination before trial that there have been some restrictions on her daily activities as a result of the accident, she was unable to recall when these restrictions began (see n 1, supra). She did indicate, however, that she was able to bowl in her bowling league during the fall and winter months following the accident.

---

1. She also indicated on this form that she was not restricted in any of her normal activities at that time.

Next, although plaintiff underwent physical therapy after the accident, her last session was in early October 2000. Although she sought out chiropractic care some nine months after the accident (i.e., on January 26, 2001), she had previously treated with this particular chiropractor between December 8, 1999 and May 3, 2000 for complaints of neck and shoulder pain, as well as headaches. Her resumption of regular chiropractic treatment following the subject accident continued through December 2002. Thereafter, however, she only had four sporadic treatments between mid-January 2003 and early January 2004. Given all of this evidence, we are satisfied that defendants made a prima facie showing of entitlement to summary judgment with respect to both categories of serious injury.

As to the 90/180-day category, plaintiff's only argument is that defendants failed to make the requisite prima facie showing. With the issue so limited, we are unpersuaded since, contrary to plaintiff's contention, defendants' expert did in fact express an opinion concerning this category of serious injury (*cf. Tornatore v Haggerty*, 307 AD2d 522 [2003]; *Temple v Doherty*, 301 AD2d 979, 983 [2003]).[2] We note further that plaintiff does not challenge the sufficiency of defendants' submissions as meeting their initial burden under the permanent consequential limitation category (*see e.g. Clements v Lasher*, 15 AD3d 712 [2005]). Thus, the remaining issue concerns only whether plaintiff met her shifted burden of raising a question of fact (*see id.*). In this regard, we find the affidavit of plaintiff's treating chiropractor to be insufficient.

In order to demonstrate a serious injury under this category, "the medical evidence must provide either a quantitative or qualitative assessment to differentiate serious injuries from mild or moderate ones" (*id.* at 713; *see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002]; *Temple v Doherty, supra* at 981). Here, the chiropractor's conclusions that plaintiff has a 10% to 15% permanent consequential limitation of her cervical spine and a 20% permanent consequential limitation of her lower back were based upon tests that relied primarily on her subjective complaints of pain (*see Mack v Goodrich*, 11 AD3d 846, 848 [2004]) and in any event do not establish a significant or consequential injury (*see Trotter v Hart*, 285 AD2d 772, 773 [2001]). Nor is there any indication in his affidavit concerning when these tests were performed, an omission that is relevant since there was only a handful of treatments after January

---

**2.** Even if plaintiff's argument is considered more broadly, we would nevertheless find that she failed to raise a question of fact with respect to this category of serious injury.

2003. Moreover, to the extent that this chiropractor references a mild to moderate muscle spasm, he does not sufficiently elaborate on this finding or correlate it to the subject accident. His undetailed opinions that plaintiff "is restricted by *some* loss of spinal motion as well as pain" (emphasis added) and has had "some difficulty" performing certain household chores also does not create an issue of fact. In sum, this affidavit does not contain an adequate factual foundation nor does it describe a permanent consequential limitation as a result of the subject accident (*see e.g. Clements v Lasher, supra; Morgan v Beh*, 256 AD2d 752, 753 [1998]; *Decker v Stang*, 243 AD2d 1033, 1036 [1997], *lv denied* 91 NY2d 812 [1998]).

Cardona, P.J., Mercure, Spain and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.